284 P.3d 209

**COMPUSA STORES LP,**
Respondent/Taxpayer–
Appellant,

v.

**DEPARTMENT OF TAXATION, State**
of Hawai'i, Petitioner/Appellee.

**No. SCWC–29597.**

Supreme Court of Hawai'i.

Feb. 14, 2011.

Reconsideration Denied March 9, 2011.

Ray K. Kamikawa and Leroy E. Colombe (Chun, Kerr, Dodd, Beaman & Wong), Honolulu, for respondent/taxpayer-appellant.

Hugh R. Jones and Damien A. Elefante, Deputy Attorneys General, for petitioner/appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ., and Circuit Judge LEE, assigned by reason on vacancy.

Opinion of the Court by
RECKTENWALD, C.J.

This case arises out of the assessment of the Hawai'i use tax by the State of Hawai'i, Department of Taxation (Department) against CompUSA Stores L.P. (CompUSA) on goods that were transported from the mainland to CompUSA's retail stores in Hawai'i during the period between July 1, 1999 and December 31, 2002. During that period, CompUSA caused consumer electronics goods from various mainland vendors to be shipped to Hawai'i in order to restock CompUSA's retail stores in this state.

Hawai'i Revised Statutes (HRS) § 238–2 (1993), quoted *infra*, governs the applicability of the Hawai'i use tax. CompUSA appealed the assessment of the tax in the Land and Tax Appeal Court (tax appeal court),[1] arguing that it was not subject to the use tax under *In re Tax Appeal of Baker & Taylor,*

---

1. The Honorable Gary W.B. Chang presided.

*Inc. v. Kawafuchi*, 103 Hawai'i 359, 361–62, 372, 82 P.3d 804, 806–07, 817 (2004) (holding that the use tax did not apply to a mainland seller who sold and shipped books to the Hawai'i State Library). CompUSA moved for summary judgment. The Department cross-moved, contending that *Baker & Taylor* was not applicable to the instant case and that the plain language of HRS § 238–2 compelled the assessment of the use tax against CompUSA. The tax appeal court granted the Department's motion and denied CompUSA's motion, holding that *Baker & Taylor* was distinguishable and that the use tax applied to CompUSA. The court entered a judgment against CompUSA in the amount of $1,705,337.71. CompUSA appealed.

The Intermediate Court of Appeals (ICA) vacated the tax appeal court's judgment and remanded for further proceedings, holding that *Baker & Taylor* was controlling and that, pursuant to that case, CompUSA was not liable for the tax. The Department seeks review of the ICA's judgment.

As discussed further *infra*, we conclude that the ICA erred in its analysis of HRS § 238–2 and *Baker & Taylor*. Specifically, we hold that *Baker & Taylor* is distinguishable because the taxpayer in that case, a mainland seller, did not "use in this State" the imported goods, as required by HRS § 238–2. *See* HRS § 238–2; *Baker & Taylor*, 103 Hawai'i at 361–62, 82 P.3d at 806–07. CompUSA, on the other hand, used the goods in Hawai'i by "keeping of the property" in this state "for sale[.]" HRS § 238–1 (1993), quoted *infra*. CompUSA's transportation of the goods to Hawai'i for resale to Hawai'i customers also satisfied the other requirements of HRS § 238–2. We, there-

fore, vacate the ICA's judgment and affirm the tax appeal court's judgment.

## I. Background

### A. Background Facts and Tax Appeal Court Proceedings

The following facts are taken from the record on appeal, including CompUSA's undisputed admissions of fact and answers to the Department's interrogatories. CompUSA's corporate headquarters are located in Dallas, Texas. CompUSA held a Hawai'i general excise tax license during the relevant period.[2] It also maintained two retail stores in Hawai'i, where it engaged in "retail sale[s] of computers, computer components, consumer electronics, and related other products and services[.]"[3]

CompUSA did not manufacture the goods it sold to its Hawai'i customers. According to CompUSA, mainland vendors shipped products either to its mainland consolidation centers ("cross-dock" shipment) and then to its Hawai'i retail stores, or directly to its Hawai'i retail stores ("drop shipment"). In both types of shipment, vendors shipped the goods pursuant to "F.O.B. Origin" contracts, which, according to CompUSA, meant that the title and risk of loss passed to CompUSA on the mainland (the origin of the shipment).[4] CompUSA maintained that "[a]ll purchasing decisions and all ordering of inventory sold at the retail stores [were] conducted and managed from" its headquarters in Texas. CompUSA did not pay the use tax at the time of the shipments at issue.

On June 9, 2004, the Department issued tax assessments requiring CompUSA to pay, inter alia, a use tax pursuant to HRS § 238–2(2)(A)[5] on CompUSA's "imports for resale."

---

2. CompUSA, in response to the Department's request for admission, confirmed that it held a Hawai'i GET license. Although this admission does not specifically state that CompUSA was licensed during the period for which the use tax was assessed, CompUSA's Opening Brief to the ICA specifically stated that "during the [relevant period], CompUSA was a licensed taxpayer[.]"

3. CompUSA stated in its Opening Brief to the ICA that it has since closed its Hawai'i stores.

4. This court has interpreted F.O.B. provisions in shipment contracts as follows: "The term FOB

generally designates where title to goods passes from the seller to the buyer. *See Black's Law Dictionary* 642 (6th ed. 1990)." *Baker & Taylor*, 103 Hawai'i at 362, 82 P.3d at 807.

5. During the relevant period, HRS § 238–2 (1993) provided, in relevant part:

There is hereby levied an excise tax on the use in this State of tangible personal property which is imported, or purchased from an unlicensed seller, for use in this State. The tax imposed by this chapter shall accrue when the property is acquired by the importer or purchaser and becomes subject to the taxing juris-

(Formatting altered). CompUSA filed a notice of appeal of the assessment with the tax appeal court.

In the tax appeal court, CompUSA moved for summary judgment, arguing, inter alia, that under this court's decision in *Baker & Taylor*,[6] CompUSA was not subject to the use tax on the goods which it owned prior to shipment from the mainland to Hawai'i. The Department cross-moved for summary judgment, contending that the plain language of HRS § 238-2 and Hawai'i Administrative Rules (HAR) § 18-238-2[7] compelled the application of the use tax to CompUSA, and that the facts in *Baker & Taylor* were distinguishable. At the hearing on the cross-motions, the tax appeal court ruled from the bench, holding that *Baker & Taylor* did not apply to the facts of the instant case and that CompUSA's transactions were subject to the use tax pursuant to HRS § 238-2. The court stated:

> [W]hat we are dealing with is a situation where the legislature is attempting to level the playing field between local vendors or sellers and mainland sellers, and there appears to be a concern that mainland sellers, because they may not be subject to the excise tax, wholesale tax, may have a huge advantage over the local vendors. And so, that could be one of the reasons underlying the use tax in the case at bar.

The Court does agree that the use tax is viewed generally as a tax that compliments [sic] the general excise tax on gross revenues, and I think that this Court is most persuaded by two facts that distinguish the case at bar from the *Baker & Taylor* case. First of all, the Court does not believe that the *Baker & Taylor* case involved a sale from the publisher, or manufacturer, of the books to Baker & Taylor. Contrast that with the facts in the case at bar, which clearly shows that CompUSA is not the manufacturer of these products but instead purchases these products from a mainland manufacturer. So, that is one factual distinction of significance.

The second fact of significant distinction in the case at bar is that we do not have a sales transaction comparable to the sale between Baker & Taylor and the library, Hawaii State Public Library System. Instead, we have one retailer that happens to be a national corporation, CompUSA. So, the distribution center of CompUSA does not have to sell any merchandise or inventory to the Hawaii retail stores.

So, we do not have—the two primary distinct—facts distinguishing the case at bar from the *Baker & Taylor* case is, number one, the existence of a purchase transaction between the manufacturer and CompUSA, and secondly, the absence of a

---

diction of the State. The rates of the tax hereby imposed and the exemptions thereof are as follows:

. . . .

(2) If the importer or purchaser is licensed under chapter 237 and is (A) a retailer or other person importing or purchasing for purposes of resale, not exempted by paragraph (1) . . ., the tax shall be one-half of one per cent of the purchase price of the property, if the purchase and sale are consummated in Hawaii; or, if there is no purchase price applicable thereto, or if the purchase or sale is consummated outside of Hawaii, then one-half of one per cent of the value of such property.

(3) In all other cases, four per cent of the value of the property.

HRS § 238-2 was amended during the relevant period. 1999 Haw. Sess. Laws Act 71, § 8 at 117–118; 2000 Haw. Sess. Laws Act 198, § 8 at 477–78; 2000 Haw. Sess. Laws Act 271, § 2 at 940–41. However, these amendments did not materially affect the quoted portions of the statute and are, therefore, not relevant to the instant case. Accordingly, this opinion refers to the

1993 version of the statute unless otherwise noted.

6. As noted previously, in *Baker & Taylor*, this court held that the use tax did not apply to a mainland seller who sold and shipped, F.O.B. origin, books to the Hawai'i State Library. 103 Hawai'i at 361–62, 372, 82 P.3d at 806–07, 817.

7. HAR § 18–238–2(b) (1998) implements HRS § 238–2 and provides, in relevant part:

> [I]f the importer or purchaser is licensed under the general excise tax law, chapter 237, HRS, and is (1) a retailer or other person importing or purchasing for purposes of resale and not exempted by subsection (a), . . . the tax shall be one-half of one per cent of the purchase price of such tangible personal property, if the purchase and sale are consummated in Hawaii, or, if there is no purchase price applicable thereto, or if the purchase or sale is consummated outside of Hawaii, then one-half of one per cent of the landed value of such property imported into Hawaii. . . .

sales transaction between mainland Com-pUSA and Hawaii CompUSA that is comparable to the transaction of the book sales from *Baker & Taylor* [sic] to the Hawaii State Library.

Those two facts are critical when we look at Justice Acoba's analysis in *Baker & Taylor*, because Justice Acoba noted at page 372 of the Hawaii public—Hawaii cite of *Baker & Taylor* that the books were sold directly from *Baker & Taylor* [sic] to the library, and therefore, *Baker & Taylor* [sic] did not import the books from an unlicensed seller. The Court believes that is a significant point that distinguishes *Baker & Taylor* from the case at bar.

In the case at bar, there does appear to be an unlicensed seller[,] that is all of the component or product manufacturers that sold product to CompUSA for the purpose of retail or resale here at Hawaii.

Justice Acoba went on to say that *Baker & Taylor* [sic] did not purchase the books and resell the goods to the library. That is also a fact of distinction from the case at bar, where we did have CompUSA purchasing the inventory or products for sale on the mainland. They purchased it on the mainland for the purpose of reselling it here in Hawaii to the ultimate user.

So, we have a situation that does appear to fall within Section 238–2 Subsection 2 Subsection'i A, which states, "If the importer or purchaser is licensed under Chapter 237 and is a retailer or other person importing or purchasing for the purposes of resale," et cetera.

The Court does find and conclude that the CompUSA series of transactions fall within Section 238–2 Subsection 2 Subsection A, and therefore, for these and any other good cause shown in the record, the Court will respectfully grant the [Department's] motion for summary judgment and

deny [CompUSA's] motion for summary judgment.

On December 22, 2008, the tax appeal court issued its order granting the Department's motion for summary judgment. On that day, the court also issued its order denying CompUSA's motion for summary judgment. Finally, on the same day, the tax appeal court entered a judgment in favor of the Department and against CompUSA, pursuant to the above orders. On January 21, 2009, CompUSA timely filed a notice of appeal.

**B. ICA Appeal**

In its Opening Brief, CompUSA argued that this court's decision in *Baker & Taylor* precluded the assessment of the use tax against CompUSA. CompUSA contended that the distinctions on which the tax appeal court relied in its oral ruling were non-existent.

Addressing the first purported distinction, CompUSA relied on a stipulation of facts from *Baker & Taylor*, which CompUSA submitted to the tax appeal court as an exhibit in support of its memorandum in opposition of the Department's motion for summary judgment. Citing the stipulation, CompUSA argued that the taxpayer in that case was a "wholesaler" who, similar to CompUSA, purchased the goods from third-party suppliers and shipped them into Hawai'i.[8] Addressing the second purported distinction, CompUSA argued that its transactions were similar to the ones in *Baker & Taylor* because "[i]n both cases, there [was] a purchase transaction outside the State of Hawaii between a manufacturer/publisher and the taxpayer[, where] the taxpayer then [brought] its own goods into the State[, and where] there [was] only one sales transaction in the State[.]"

Finally, CompUSA discussed the 2004 legislative amendments to HRS chapter 238.[9]

---

8. Stipulated Fact 4 specifically referred to the taxpayer in *Baker & Taylor* as "one of the largest wholesalers of books in the world[.]"

9. In 2004, the legislature made several amendments to the use tax statute in response to *Baker & Taylor*. 2004 Haw. Sess. Laws Act 114, § 1 at 431 ("The purpose of this Act is to clarify current use tax laws in light of *Baker & Taylor*[.]"). The

following passages highlight the relevant differences between the pre- and post-amendment text of the definitional provisions of HRS chapter 238. HRS § 238–1 (1993) defined "import" as "includ[ing] importation into the State from any other part of the United States or its possessions or from any foreign country, whether in interstate or foreign commerce, or both." The 2004

CompUSA contended that retroactive application of the 2004 legislative amendments was unconstitutional under the Due Process clause, in contravention of the judiciary's "exclusive power to interpret the law," and invalid as a legislative attempt "to overrule" the judiciary.[10] (Formatting altered).

In its Answering Brief, the Department reiterated its position that the plain language of HRS §§ 238–1, 238–2 and HAR § 18–238–2 subjected CompUSA to the use tax. Specifically, the Department argued that the statutes and the administrative rule clearly apply to a Hawai'i-licensed retailer who purchased goods from an unlicensed seller outside of Hawai'i and imported such goods into the state in order to sell them at retail to the general public in Hawai'i. The Department also reiterated its contention that *Baker & Taylor* was distinguishable from the instant case because, unlike CompUSA, the taxpayer in *Baker & Taylor* 1) did not direct a third-party supplier to ship goods to Hawai'i; 2) relinquished title to the goods on the mainland before shipping them to Hawai'i; and 3) did not ship the goods to Hawai'i with the purpose of reselling them here.

The Department also argued that CompUSA's contentions regarding the 2004 legisla-

> amendments, on the other hand, contain the following definition:
>
> > (1) The importation into the State *of tangible property, services, or contracting owned, purchased from an unlicensed seller, or however acquired,* from any other part of the United States or its possessions or from any foreign country, whether in interstate or foreign commerce, or both[.]; *and*
> > (2) *The sale and delivery of tangible personal property owned, purchased from an unlicensed seller, or however acquired, by a seller who is or should be licensed under the general excise tax law from an out-of-state location to an in-state purchaser, regardless of the free on board point or the place where title to the property transfers to the purchaser.*
>
> 2004 Haw. Sess. Laws Act 114, § 2 at 431–32 (formatting in original).
> In addition, the definition of "use" in the 1993 version of the statute read as follows:
> > any use, whether the use is of such nature as to cause the property to be appreciably consumed or not, or the keeping of the property for such use or for sale, and shall include the exercise of any right or power over tangible personal property incident to the ownership of that property, but the term "use" shall not include [a number of exceptions].

tive amendments to HRS chapter 238 were "irrelevant" because the tax appeal court did not rule on the issue. Finally, the Department contended that the amendments constituted a clarification, rather than a substantive change, of the statutory language.

In its Memorandum Opinion, the ICA held that CompUSA was not subject to the use tax on the goods in question. As to the relevance of *Baker & Taylor*, the ICA first noted that, "[a]lthough not specifically stated in the ... opinion, the parties in that case stipulated and the court, without a doubt, understood that [the taxpayer there] was a wholesaler of books and other educational materials to institutional and commercial customers." (Footnote omitted). The ICA relied on the copy of the *Baker & Taylor* stipulation, which CompUSA submitted to the tax appeal court as an exhibit to its memorandum in opposition of the Department's motion for summary judgment. The Department did not, in the tax appeal court or the ICA, object to the introduction of the *Baker & Taylor* stipulation.

The ICA applied *Baker & Taylor* as follows:

> HRS § 238–1 (1993).
> However, the definition of "use" in the 2004 amendments includes:
> > any use, whether the use is of such nature as to cause the property, services, or contracting to be appreciably consumed or not, or the keeping of the property or services for such use or for sale, [and shall include] the exercise of any right or power over tangible or intangible personal property incident to the ownership of that property, *and shall include control over tangible or intangible property by a seller who is licensed or who should be licensed under chapter 237, who directs the importation of the property into the [S]tate for sale and delivery to a purchaser in the State, liability and free on board (FOB) to the contrary notwithstanding, regardless of where title passes* ....
> 2004 Haw. Sess. Laws Act 114, § 2 at 432 (formatting in original).

**10.** There is no indication that the tax appeal court relied on the 2004 amendments in granting the Department's motion for summary judgment. According to CompUSA's Reply Brief in the ICA, CompUSA made this argument to "protect its position on [ ] appeal" in the event the ICA addressed the retroactive application of the 2004 amendments.

In this case, as in *Baker & Taylor*, there was no purchase or importation from an unlicensed seller because CompUSA itself was the supplier. The [Department] argues that CompUSA necessarily purchased its goods from unlicensed vendors such as Apple, HP, Belkin, Palm, etc. However, so did Baker, which was stipulated to be a book wholesaler, not a publisher or manufacturer. CompUSA, like Baker, completed its third-party purchase transactions on the mainland and then shipped the goods to Hawai'i. CompUSA, like Baker, sold goods it owned to its customers in Hawai'i. The supreme court, in *Baker & Taylor*, treated this transaction as an initial sale of the taxpayer's goods, rather than a resale of goods purchased from an unlicensed third-party vendor. We must apply the same analysis in this case. Like the taxpayer in *Baker & Taylor*, CompUSA could not be said to have imported or purchased goods from itself, and therefore was not liable for payment of the use tax under the law in effect during the [relevant period].

The ICA, accordingly, held that *Baker & Taylor* compelled the conclusion that CompUSA was not subject to the use tax.

The ICA also rejected the Department's argument that HAR § 18–238–2 required a different result, reasoning that an administrative rule "cannot contradict the statute." With regard to the 2004 legislative amendments, the ICA held that the amendments constituted a modification, not a "clarification," of the existing law. The ICA did not apply the modified statute to the instant case, implicitly holding that the amendments did not apply retroactively to CompUSA's pre-amendment conduct. The ICA further noted that the purpose of the amendments was to close "a loophole in the use tax law" of which the taxpayer in *Baker & Taylor* "successfully availed itself ... by shipping goods it already owned to Hawai'i, rather than

goods purchased directly from non-licensed mainland sellers."

The ICA filed its judgment on August 30, 2010, vacating the tax appeal court's judgment and remanding for further proceedings consistent with the memorandum opinion. The Department timely filed its application on November 22, 2010. CompUSA filed a timely response on December 7, 2010.

## C. Application and Response

In its application, the Department argues that the ICA erred in holding that the use tax did not apply to CompUSA.[11] The Department argues that the purpose of the use tax, as set forth in its legislative history, was to "tax[ ] the value of goods purchased directly from non-licensed sellers and brought into the State for resale." (Quoting S. Conf. Comm. Rep. No. 6, in 1965 Senate Journal, at 814) (emphasis omitted). The Department also relies on the plain language of HRS § 238–2, reasoning that property is taxable if it was "*either* (1) imported for resale in Hawaii or (2) purchased from an unlicensed seller for resale in Hawaii[.]" (Emphasis in original) (footnote omitted). The Department also argues that the ICA's decision "nullifies the use tax law for the tax years at issue because its decision means that there would be no instance where the use tax would apply."

Finally, the Department contends that the ICA's reading of *Baker & Taylor* improperly assumed "facts [that] are clearly unsupported by the *Baker & Taylor* record on appeal[.]" Specifically, the Department challenges the ICA's conclusions that 1) the taxpayer in *Baker & Taylor* purchased goods on the mainland and then shipped them to Hawai'i; and 2) the transaction was "the initial sale of the taxpayer's goods, rather than a resale of goods purchased from an unlicensed third-party vendor."[12] (Internal quotation marks omitted).

---

11. Specifically, the Department raises the following questions:
 1. Whether the [ICA] correctly interpreted and applied Hawaii's use tax law, Chapter 238, [HRS].
 2. Whether the ICA erred in its interpretation and application of [*Baker & Taylor*] to the facts of this case.

12. In our view, this argument somewhat mischaracterizes the ICA's decision. The ICA did not state that the transaction in *Baker & Taylor* was *in fact* an initial sale, rather than a resale. Instead, the ICA concluded that this court *treated* that transaction as an initial sale. The distinction is important because the Department argues that the ICA "assumed facts that were never in

CompUSA, in its response, argues that the ICA correctly applied *Baker & Taylor* to the instant case. Alleging that the Department is principally concerned with "state tax revenues," CompUSA notes that "laws should be applied according to their plain language, and not with reference to revenue enhancement." CompUSA urges this court to "apply the plain language of the statute, and not rely on legislative history to create an issue." It also reiterates the arguments in its ICA briefs, contending that *Baker & Taylor* is applicable to the case at bar. CompUSA argues that it was similarly situated to the taxpayer in *Baker & Taylor* because CompUSA "purchased goods on the mainland, brought them to Hawaii, and sold them in Hawaii to its customers." Finally, CompUSA contends that "there is little practical reason for this court to revisit its no [sic] decision" in *Baker & Taylor* because the 2004 legislative amendments to the use tax statute eliminated "what the ICA characterized as a 'loophole'[.]" (Formatting altered) (footnote omitted).

## II. Standard of Review

■ The appellate court reviews a "grant or denial of summary judgment *de novo.*" *Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

This court has explained that:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted. by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

the record or stated in the *Baker & Taylor* opin-

*Id.* (citations omitted) (brackets in original); *see also* Hawai'i Rules of Civil Procedure Rule 56(e).

## III. Discussion

### A. The plain language of HRS §§ 238–1 and 238–2 compels the application of the use tax to CompUSA

The dispositive issue in this case is whether HRS chapter 238 requires the assessment of the use tax against the goods which CompUSA transported from the mainland to its Hawai'i retail stores.

The use tax is closely connected with Hawaii's general excise tax (GET). *In re Hawaiian Flour Mills, Inc.,* 76 Hawai'i 1, 13, 868 P.2d 419, 431 (1994); *In re Habilitat, Inc.,* 65 Haw. 199, 209, 649 P.2d 1126, 1133–34 (1982). The GET places a 0.5% tax on the business of manufacturing and wholesaling in Hawai'i, resulting in a price differential between the products made and sold wholesale locally and the same products made and sold wholesale on the mainland. HRS §§ 237–13(1)–(2) (1993); *Habilitat,* 65 Haw. at 209, 649 P.2d at 1133–34. "In the absence of a use tax that complements a GET, sellers of goods acquired out-of-state theoretically enjoy a competitive advantage over sellers of goods acquired in-state: ... out-of-state products would be less expensive than in-state products, the prices of which would presumably reflect some pass-on of the GET." *Flour Mills,* 76 Hawai'i at 13, 868 P.2d at 431; *see Habilitat,* 65 Haw. at 209, 649 P.2d at 1133–34.

The Department assessed a use tax on CompUSA's "imports for resale" for the period between July 1, 1999 and December 31, 2002, pursuant to HRS § 238–2(2)(A). (Formatting altered). The relevant language of HRS § 238–2 during that period was as follows:

There is hereby levied an *excise tax on the use in this State of tangible personal property which is imported, or purchased from an unlicensed seller, for use in this State.* The tax imposed by this chapter shall accrue when the property is acquired by the importer or purchaser and becomes

ion."

subject to the taxing jurisdiction of the State. The rates of the tax hereby imposed and the exemptions thereof are as follows:

. . . .

(2) *If the importer or purchaser is licensed under chapter 237 and is (A) a retailer or other person importing or purchasing for purposes of resale,* not exempted by paragraph (1), or (B) a manufacturer importing or purchasing material or commodities which are to be incorporated by the manufacturer into a finished or saleable product (including the container or package in which the product is contained) wherein it will remain in such form as to be perceptible to the senses, and which finished or saleable product is to be sold at retail in this State, in such manner as to result in a further tax on the activity of the manufacturer in selling such products at retail, or (C) a contractor importing or purchasing material or commodities which are to be incorporated by the contractor into the finished work or project required by the contract and which will remain in such finished work or project in such form as to be perceptible to the senses, *the tax shall be one-half of one per cent of the purchase price of the property, if the purchase and sale are consummated in Hawaii; or, if there is no purchase price applicable thereto, or if the purchase or sale is consummated outside of Hawai'i, then one-half of one per cent of the value of such property.*

(3) In all other cases, four per cent of the value of the property.

HRS § 238–2 (1993) (emphasis added).

 The plain language of HRS § 238–2(2)(A) set forth the following requirements

for the imposition of the use tax pursuant to that subsection: 1) the taxpayer is licensed under HRS chapter 237; 2) the taxpayer is a retailer; and 3) the taxpayer imported or purchased the goods for purposes of resale. HRS § 238–2(2)(A). The introductory paragraph of HRS § 238–2 also made clear that the tax was levied on "the use in this State." Thus, the taxpayer must have used the imported or purchased goods within the state in order to be subject to the tax. In other words, HRS § 238–2 imposed a tax *on the purchaser* of out-of-state goods for using the goods within the state. Such imposition is wholly consistent with the statute's purpose of minimizing the price advantage of out-of-state goods. *See Flour Mills,* 76 Hawai'i at 13, 868 P.2d at 431; *Habilitat,* 65 Haw. at 209, 649 P.2d at 1133–34.

Finally, the introductory paragraph of HRS § 238–2 provided another prerequisite to the imposition of the use tax. Where the tax is premised on the purchase (rather than importation) of goods, the purchase must be "from an unlicensed seller[.]" [13] HRS § 238–2.

Turning to the facts of the instant case, CompUSA admitted that during the relevant period it held a Hawai'i general excise license. CompUSA also was a "retailer" under the statute. During the relevant period, HRS § 238–1 (1993) provided, as it does now, that the word "retailer" for purposes of the use tax is defined in chapter 237. HRS § 237–16 (1993) provided that retailing includes "the sale of tangible personal property, for consumption or use by the purchaser and not for resale[.]" [14] It is undisputed that

---

13. The punctuation in the introductory paragraph makes clear that the "unlicensed seller" qualifier applies only to purchases and not to imports: "property which is imported, or purchased from an unlicensed seller, for use in this State." HRS § 238–2. Although some statements in *Baker & Taylor* may be read to apply the "unlicensed seller" requirement to imports, such reading of *Baker & Taylor* would be unreasonable in light of the clear language of the statute. HRS § 238–2 (applying the use tax to "property which is imported, or purchased from an unlicensed seller, for use in this State"); *cf. Baker & Taylor,* 103 Hawai'i at 372, 82 P.3d at 817 ("Therefore [the taxpayer] did not import the books from an unlicensed seller.").

14. HRS 237–16 (1993) imposed a GET on "certain retailing[.]" It stated that "[p]ersons on whom a tax is imposed by this section hereinafter are called 'retailers'." *Id.* HRS 237–16 was amended during the relevant period in ways that do not materially affect the quoted portions of the statute. 1999 Haw. Sess. Laws Act 71, § 7 at 116–17; 2000 Haw. Sess. Laws Act 198, § 5 at 474. In addition, HRS § 237–16 was repealed in 2003, 2003 Haw. Sess. Laws Act 135, § 11 at 329, and the definition of "retailer" set forth in HRS § 237–16 (1993) was incorporated into HRS § 237–1. 2003 Haw. Sess. Laws Act 135, § 1 at 318. In any event, HRS § 237–16 was operative during the relevant period in this case.

CompUSA engaged in such sales at its Hawai'i retail stores.

The requirement that the taxpayer use the goods in the state is also met here. HRS § 238–1 defined "use" as "any use[,]" including "keeping of the property ... for sale[.]" [15] CompUSA admitted that the products in question were shipped to its Hawai'i stores, from which it sold the products to Hawai'i customers. Therefore, on the undisputed facts, CompUSA "ke[pt] the property ... for sale" "in this State." HRS § 238–1 and 238–2. Such "keeping of the property ... for sale" constituted a use of the property in this state, as required under HRS § 238–2. HRS § 238–2 ("There is hereby levied an excise *tax on the use in this State* of tangible personal property which is imported, or purchased from an unlicensed seller, for use in this State.") (emphasis added).

The next requirement for imposing the use tax under HRS § 238–2(2)(A) is that the taxpayer "import[ ] or purchas[e] [the goods] for purposes of resale[.]" HRS § 238–2(2)(A). HRS § 238–1 (1993) provided the following definitions of "import" and "purchase":

> "Import" (or any nounal, verbal, adverbial, adjective, or other equivalent of the term) includes importation into the State from any other part of the United States or its possessions or from any foreign country, whether in interstate or foreign commerce, or both.
>
> . . . .
>
> "Purchase" and "sale" mean and refer to any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means, wheresoever consummated, of tangible personal property for a consideration.

The term "importation" is defined as "[t]he bringing of goods into a country from another country," *Black's Law Dictionary* 824 (9th ed. 2009), or "the act or practice of bringing in (as merchandise) from an outside or for-

eign source," *Webster's Third New International Dictionary* 1135 (3d ed. 1966). The statutory definition clarified that the term includes the transfer of goods into Hawai'i from another state or a territory of the United States. HRS § 238–1. Thus, the act of bringing goods from outside of Hawai'i into the state constitutes "importation."

In the instant case, CompUSA admitted that it directed the transport of goods from its mainland consolidation centers or suppliers to its Hawai'i retail stores. Therefore, it imported the goods into the state. It is also clear from the undisputed facts that CompUSA did so "for purposes of resale," HRS § 238–2(2)(A), because it transported the goods from the mainland in order to restock its Hawai'i retail stores.

Moreover, CompUSA's responses to the Department's interrogatories and requests for admission make clear that it also "purchas[ed]" the goods "for purposes of resale[.]" HRS § 238–2(2)(A). According to CompUSA, some of the goods in question were shipped by CompUSA's mainland suppliers directly to its Hawai'i stores as drop shipments. Therefore, on the undisputed facts, when CompUSA purchased goods from its mainland suppliers for drop shipments, it intended to resell them in Hawai'i.

CompUSA also purchased goods with intent to resell them in Hawai'i when it ordered cross-dock shipment goods from its suppliers. With cross-dock shipments, mainland suppliers would ship the purchased goods to a CompUSA mainland consolidation center, from which CompUSA would ship the goods to its Hawai'i stores. CompUSA stated in its response to an interrogatory that:

> CompUSA utilized a software system during the [relevant period] to analyze the inventory and sales for the retail stores and make future sale forecasts. . . . Based on the analysis performed using this software in Dallas, *goods are allocated to the*

---

**15.** HRS § 238–1 was amended during the relevant period. 1999 Haw. Sess. Laws Act 70, § 4 at 102–05; 2000 Haw. Sess. Laws Act 27, § 2 at 51; 2000 Haw. Sess. Laws Act 38, § 3 at 68–69; 2000 Haw. Sess. Laws Act 198, § 7 at 475–77; 2001 Haw. Sess. Laws Act 210, § 3 at 530–32; 2002 Haw. Sess. Laws Act 40, § 8 at 126. However, these amendments did not materially affect the quoted portions of the statute and are, therefore, not relevant to the instant case. Accordingly, this opinion refers to the 1993 version of the statute unless otherwise noted.

*various retail stores, including the two Hawaii stores.*

. . . .

*. . . Vendors' goods bound for Hawaii are served by the cross-dock at La Palma, California.*

(Emphasis added).

Additionally, in support of its motion for summary judgment, CompUSA submitted a declaration from Joe Miller, who was its "replenishment buyer" and the "Director of Replenishment" during the relevant period. As such, he "was involved in the day-to-day purchasing and allocating process[.]" The declaration described how the software system was utilized to purchase goods for restocking CompUSA's Hawai'i stores:

9. . . . I was one of the people integrally involved with [the development of the software system].

. . . .

13. During the [relevant period] . . . , 12 [employees] were *replenishment buyers who used the system on a daily basis for purchasing (i.e. direct-to-store orders through drop shipment) and allocating (i.e., ordering products to be shipped to individual stores through cross-docks ).*

. . . .

16. . . . *As a team, we would forecast what individual CompUSA retail stores may need, including the stores in Hawaii.* We based this on a combination of factors, including previous years' data, seasonability, reports, and forecasts from the finance department. *We then input this information into the [software system], and the system calculated how much of any particular good to order.*

(Emphasis added).

Therefore, on the undisputed facts, CompUSA determined the amount of restocking required at its Hawai'i stores and ordered the goods from the mainland suppliers based on that determination. CompUSA, therefore, purchased the goods from the suppliers with the purpose of reselling the same goods in Hawai'i.

As previously noted, in order to impose the use tax on the basis of a purchase, the purchase must be from an "unlicensed seller[.]" HRS § 238-2. HRS § 238-1 defined "unlicensed seller" as a seller who is not subject to the Hawai'i GET. As the ICA stated, it is undisputed that the goods which CompUSA purchased from its mainland suppliers "did not subject the third-party vendors to the Hawai'i [GET]." Therefore, the "unlicensed seller" requirement is satisfied in this case.

■ In sum, the plain language of the use tax statute, as applied to the undisputed facts of the instant case, compels the conclusion that CompUSA is liable for the use tax because it is a "retailer" licensed under HRS chapter 237, it used the goods in Hawai'i, and it did so after it imported and purchased them "for purposes of resale[.]" *See* HRS § 238-1 and 238-2.

**B. CompUSA's reliance on *Baker & Taylor* is misplaced because CompUSA's circumstances are not analogous to those of the taxpayer in that case**

CompUSA argues that it is not subject to the use tax under this court's decision in *Baker & Taylor.* In that case, this court held that a mainland seller was not subject to the use tax on books which it sold and shipped, F.O.B. mainland, to the Hawai'i State Library (library). *Baker & Taylor,* 103 Hawai'i at 361–62, 372, 82 P.3d at 806–07, 817. The taxpayer had no offices or employees based in Hawai'i and did not hold a Hawai'i GET license during the relevant period. *Id.* at 361–62, 82 P.3d at 806–07. Its employees visited Hawai'i on several occasions to meet with representatives of the library in order to discuss a contract to sell books to the library. *Id.* at 362–63, 82 P.3d at 807–08. After the contract was formed, the taxpayer shipped the books from the mainland to the library pursuant to an "FOB point of shipment" contract.[16] *Id.* at 362, 82

---

16. This court also noted that, prior to the transactions in question, the taxpayer had also made sales to Hawai'i customers pursuant to "FOB Hawai'i" contracts. *Id.* at 362, 82 P.3d at 807. However, the taxpayer did not challenge the assessment of the use tax against those sales. *Id.* at 372, 82 P.3d at 817 ("[The taxpayer] argues that inasmuch as it was stipulated that title passed on the mainland, [the taxpayer] did not own the goods when they arrived in Hawai'i.").

P.3d at 807. This court explained that, under that contract, the "title passed from [the taxpayer] to the customer at the loading docks on the mainland[.]" *Id.*

This court held that the use tax did not apply to the taxpayer in that case because "[t]he sale of books was directly from [the taxpayer] to the [l]ibrary." *Id.* at 372, 82 P.3d at 817. The court stated that:

> [The taxpayer] did not import the books from an unlicensed seller. Furthermore, [the taxpayer] did not purchase the books and "resell" the goods to the [l]ibrary. Under the circumstances of this case [the taxpayer] could not import from itself or purchase from itself. Therefore, [the taxpayer] is not subject to the use tax under the plain language of HRS § 238-1.

*Id.*

CompUSA argues that it was similarly situated to the taxpayer in *Baker & Taylor* because it owned the goods before they were shipped to Hawai'i, and, therefore, it "could not import from itself or purchase from itself." (Internal quotation marks omitted). However, the taxpayer in *Baker & Taylor* was in a significantly different position from CompUSA. As noted above, the use tax attaches to the use of goods in this state and is imposed on the purchaser of the goods who makes such use of them. HRS § 238-2. The taxpayer in *Baker & Taylor* did not use the books in Hawai'i. Once it sold the books and once the title passed on the mainland, it no longer owned them, and it had no presence in Hawai'i to make any use of them. *See id.* at 361–62, 372, 82 P.3d at 806–07, 817. CompUSA, on the other hand, was the purchaser of the goods in the instant case. It had the title to the goods by the time they arrived in Hawai'i, and it used the goods by "keeping [them] for sale[.]" HRS § 238-1.

Thus, CompUSA's suppliers, and not CompUSA, were comparable to the taxpayer in *Baker & Taylor* because, once the title to the goods passed from the suppliers on the mainland, they could no longer import or purchase from themselves under the reasoning in *Baker & Taylor.*[17] *See Baker & Taylor,* 103 Hawai'i at 372, 82 P.3d at 817. CompUSA, on the other hand, was in exactly the opposite position: it could and did use the goods in Hawai'i after the title passed on the mainland. That is, unlike in *Baker & Taylor,* where the title passed *from the taxpayer* before the goods reached Hawai'i, the title here passed *to the taxpayer* on the mainland. Thus, unlike the taxpayer in *Baker & Taylor,* CompUSA had the title to the goods when they arrived in Hawai'i, where CompUSA "used" the goods by keeping them for resale.

This court also stated in *Baker & Taylor* that the taxpayer "did not import the books from an unlicensed seller" because "[t]he sale of books was directly from [the taxpayer] to the [l]ibrary." *Id.* It could be argued that this language allows any Hawai'i purchaser to avoid the use tax on the resale of goods purchased directly from mainland. However, such an interpretation conflicts with this court's case law and the very purpose of the use tax. As this court has declared, "the enactment of the use tax in 1965 was prompted in part by the 'substantial volume of *sales* by unlicensed sellers to local buyers *(that)* ... *escape(d) taxation because such sales* ... *(were) accomplished directly* between buyer and seller without the services of an intermediary.'" *Habilitat,* 65 Haw. at 209, 649 P.2d at 1134 (emphasis added) (alterations in original) (quoting H. Conf. Comm. Rep. No. 21, in 1965 House Journal, at 843).

When read in the factual context of the case, the above quote from *Baker & Taylor* clarifies that the use tax did not apply to *the out-of-state seller* who sold directly to a Hawai'i customer. *See Baker & Taylor,* 103 Hawai'i at 361–62, 82 P.3d at 806–07 (noting that the taxpayer had no staff, offices, or real estate in Hawai'i). *Baker & Taylor* did not,

---

17. It should be noted that it is no longer clear that CompUSA's suppliers or similarly situated companies can rely on *Baker & Taylor* to avoid the use tax. The 2004 amendments to HRS chapter 238 provide that the definitions of "import" and "use" operate notwithstanding the F.O.B. point or where the title to the goods passes. 2004 Haw. Sess. Laws Act 114, § 1 at 431–32. The legislature also provided that the amendments "shall take effect retroactive to taxable years beginning after December 31, 1998." 2004 Haw. Sess. Laws Act 114, § 7 at 435. However, because CompUSA is subject to the use tax statute notwithstanding the 2004 amendments, this court need not decide whether the 2004 amendments apply retroactively.

however, hold that the in-state purchaser, i.e. the person "us[ing the goods] in this State," HRS § 238–2, is also free from the use tax. If both the seller and the purchaser were relieved of the tax burden, then the use tax would not accomplish its goal of minimizing the price advantage of buying directly from a mainland seller. *Habilitat*, 65 Haw. at 200, 209, 649 P.2d at 1128, 1134 (holding that a Hawai'i purchaser of mainland goods was subject to the use tax when it "directed the unlicensed sellers to transmit the purchased goods to [its Hawai'i customers].").

Because *Baker & Taylor* is distinguishable from the case at bar, the analysis of the use tax statute set forth in Part III.A of this opinion controls. Therefore, CompUSA is liable for the use tax under HRS § 238–2(2)(A).[18]

---

18. In addition, because *Baker & Taylor* is distinguishable from this case, this court need not reach the question whether the 2004 legislative amendments to HRS chapter 238 apply retroactively.

## IV. Conclusion

On the undisputed facts, the use tax applies to CompUSA as a matter of law. Therefore, the tax appeal court properly granted the Department's motion for summary judgment and denied CompUSA's motion for summary judgment, and the ICA erred in vacating the tax appeal court's judgment.

Accordingly, we vacate the judgment of the ICA and affirm the judgment of the tax appeal court.