**Electronically Filed
Supreme Court
SCAP-15-0000861
18-MAY-2018
08:10 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

COMPUSA STORES, L.P.,
Appellant-Appellant,

vs.

STATE OF HAWAIʻI, DEPARTMENT OF TAXATION,
Appellee-Appellee.

SCAP-15-0000861

APPEAL FROM THE TAX APPEAL COURT OF THE STATE OF HAWAIʻI
(CAAP-15-0000861; TAX APPEAL CASE NO. 1TX12-1-0264)

MAY 18, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  Introduction

This case requires us to determine if Hawaii's use tax violates the Commerce Clause or the Equal Protection Clause of

the United States Constitution.

CompUSA Stores, L.P. (CompUSA) is a Texas-based limited partnership which operated two retail stores in Hawai'i selling personal computers and other consumer electronics until 2008. CompUSA imported all goods that it sold from third party vendors outside the state. Pursuant to the use tax statute, Hawai'i Revised Statutes (HRS) § 238-2,[1] in the years 2006, 2007, and 2008, CompUSA made use tax payments in the amount of $385,855.68, $323,628.50 and $42,045.78, respectively.

In 2010, CompUSA filed claims for refund of its 2006, 2007, and 2008 use tax payments. The Department of Taxation (Department) denied CompUSA's request for refund. CompUSA appealed, and its appeal was ultimately transferred to the Tax Appeal Court.[2] CompUSA and the Department's Director of Taxation (Director) submitted cross-motions for summary judgment to the Tax Appeal Court. The Tax Appeal Court denied CompUSA's Motion for Summary Judgment, and granted the Department's Motion for

---

[1]     HRS § 238-2 (Supp. 2004) provides, in relevant part:

> There is hereby levied an excise tax on the use in this State of tangible personal property which is imported by a taxpayer in this State whether owned, purchased from an unlicensed seller, or however acquired for use in this State. The tax imposed by this chapter shall accrue when the property is acquired by the importer or purchaser and becomes subject to the taxing jurisdiction of the State.

[2]     The Honorable Gary W.B. Chang presided.

Summary Judgment, concluding that the use tax does not violate the Commerce Clause or the Equal Protection Clause.  CompUSA timely filed its notice of appeal in the Intermediate Court of Appeals (ICA) and subsequently filed its application for transfer, which was granted.

In 2004, the legislature amended the use tax statute, HRS § 238-2.  CompUSA argues that the 2004 amendment to the statute rendered the statute unconstitutional because the amendment eliminated the application of the tax to in-state unlicensed sellers, thereby limiting the tax to out-of-state sellers.  Thus, CompUSA argues that the use tax violates the Commerce Clause and the Equal Protection Clause because the tax discriminates against out-of-state commerce, and cannot be justified by a legitimate local purpose.

We conclude that the current version of the statute serves a legitimate local purpose of leveling the playing field between in-state and out-of-state sellers, because in-state sellers are subject to the general excise tax (GET), and out-of-state sellers are subject to the use tax.  Further, HRS § 237-22(a) (Supp. 2002) and HRS § 238-3(i) (Supp. 2000) are designed to ensure that out-of-state sellers are not over-taxed.  Thus, HRS § 238-2 does not violate the Commerce Clause of the United States Constitution.

In evaluating whether the current version of the use tax statute violates the Equal Protection Clause, we agree with CompUSA that the statute establishes a classification between in-state and out-of-state sellers. However, the statute satisfies rational basis review because the classification of out-of-state sellers bears a rational relationship to the legitimate state interest of "leveling the economic playing field" for local businesses subject to the GET. Thus, HRS § 238-2 does not violate the Equal Protection Clause of the United States Constitution.

Accordingly, we affirm the Tax Appeal Court's October 6, 2015 judgment granting the Department's motion for summary judgment and denying CompUSA's motion for summary judgment.

## II. Background

### A. The Use Tax in Hawaiʻi

This court has summarized the use tax, HRS § 238-2, as follows:

> The use tax is closely connected with Hawaii's general excise tax (GET). The GET places a 0.5% tax on the business of manufacturing and wholesaling in Hawaiʻi, resulting in a price differential between the products made and sold wholesale locally and the same products made and sold wholesale on the mainland. In the absence of a use tax that complements a GET, sellers of goods acquired out-of-state theoretically enjoy a competitive advantage over sellers of goods acquired in-state: . . . out-of-state products would be less expensive than in-state products, the prices of which

4

would presumably reflect some pass-on of the GET.
CompUSA Stores LP v. Dep't of Taxation (CompUSA I), 128 Hawai'i
116, 122, 284 P.3d 209, 215 (2011) (internal citations and
quotations omitted) (citing HRS § 238-2 (1993)).

In 2004, the legislature amended HRS Chapter 238 for
the following purpose:

> The purpose of this Act is to clarify current use tax
> laws in light of Baker & Taylor, Inc. v. Kawafuchi,
> S.C. 23376 (Jan. 14, 2004) and administrative rule 18-
> 237-13-02.01 by:
> (1)   Clarifying when a seller is subject to the
>       0.5 per cent use tax;
> (2)   Restoring the imposition of taxes on goods
>       purchased both within and outside the
>       State; and
> (3)   Clarifying that the use tax applies to
>       sellers who acquire goods from outside the
>       State and import the product for sale or
>       resale in the State.

2004 Haw. Sess. Laws Act 114, § 1 at 431.

In Baker & Taylor, this court held that the use tax did
not apply to a mainland seller, Baker, who sold and shipped, FOB
("free on board") origin, books to the Hawai'i State Library.  In
re Tax Appeal of Baker & Taylor, Inc. v. Kawafuchi, 103 Hawai'i
359, 361-62, 372, 82 P.3d 804, 806-07, 817 (2004).  Title passed
to the library while the books were on the mainland, and thus
Baker did not own the goods when they arrived in Hawai'i, or use
them in Hawai'i.  Id.  Because the sale of books was directly
from Baker to the library, Baker therefore did not import the
books from an unlicensed seller, and Baker did not purchase the

5

books and resell them to the library.  Id.  Thus, this court concluded that Baker was not subject to the use tax under the plain language of the statute.[3]  Id.

The 2004 amendment, inter alia, both added and removed[4] language in HRS § 238-2:

> There is hereby levied an excise tax on the use in this State of tangible personal property which is imported[, or] by a taxpayer in this State whether owned, purchased from an unlicensed seller, or however acquired for use in this State. The tax imposed by this chapter shall accrue when the property is acquired by the importer or purchaser and becomes subject to the taxing jurisdiction of the State.
>
> . . . .
>
> For purposes of this section, tangible personal property is property that is imported by the taxpayer for use in this State, notwithstanding the fact that title to the property, or the risk of loss to the property, passes to the purchaser of the property at a location outside this State.

2004 Haw. Sess. Laws Act 114, § 3 at 433, 435.

Further, the definitions for "import" and "purchaser" were amended as follows to clarify that the use tax applies to the purchase of tangible property from an unlicensed seller,

_____

[3]    In 2004, CompUSA appealed the Department's assessment of the use tax under HRS § 238-2 on goods it transported from the mainland for the tax period between July 1, 1999 and December 31, 2002.  CompUSA argued that it was not subject to the use tax under this court's decision in Baker & Taylor. CompUSA I, 128 Hawaiʻi at 118-19, 284 P.3d at 211-12.  The tax appeal court granted summary judgment against CompUSA, which the ICA affirmed.  Id. at 119-21, 284 P.3d at 212-14.  On certiorari review, this court upheld the assessment of the use tax against CompUSA holding that, under Baker & Taylor, the use tax applied to CompUSA's business activities.  Id. at 127, 284 P.3d at 220.

[4]    Underlining indicates added text, and brackets with strikeouts indicate removed text.

whether the title passed in-state or out-of-state:

> "Import" . . . . includes:
>
> (1)   The importation into the State of tangible property, services, or contracting owned, purchased from an unlicensed seller, or however acquired, from any other part of the United States or its possessions or from any foreign country, whether in interstate or foreign commerce, or both[.]; and
>
> (2)   The sale and delivery of tangible personal property owned, purchased from an unlicensed seller, or however acquired, by a seller who is or should be licensed under the general excise tax law from an out-of-state location to an in-state purchaser, regardless of the free on board point or the place where title to the property transfers to the purchaser.
>
> . . . .
>
> "Purchaser" means any person purchasing property, services, or contracting and "importer" means any person importing property, services, or contracting[,], regardless if at the time of importation, the property, services, or contracting is owned by the importer, purchased from an unlicensed seller, or however acquired; . . . .

2004 Haw. Sess. Laws Act 114, § 2 at 431-32.

The definition of "use" was also changed with the

addition of the following language:

> and shall include control over tangible or intangible property by a seller who is licensed or who should be licensed under chapter 237, who directs the importation of the property into the state for sale and delivery to a purchaser in the State, liability and free on board (FOB) to the contrary notwithstanding, regardless of where title passes . . . .

2004 Haw. Sess. Laws Act 114, § 2 at 432.

**B.   Tax Appeal Court Proceedings**

The following facts appear undisputed from the record.

From January 1, 2006 through February 29, 2008, CompUSA conducted

7

its retail business through two stores on Oahu.  CompUSA did not manufacture any of the products sold at its retail stores and purchased all products from vendors and manufacturers located outside of Hawai'i.  CompUSA also purchased and imported products for its own use in Hawai'i.  CompUSA was thus assessed use tax in the following amounts:  (1) $385,855.68 in 2006; (2) $323,628.46 in 2007; and (3) $42,045.78 in 2008.  On April 20, 2010, CompUSA filed General Excise/Use Tax Annual Return & Reconciliation forms for all three years, requesting a refund for the use tax paid in each year.  The Department denied the request for a refund on the 2006 tax year and issued tax assessments for the 2007 and 2008 tax years.

CompUSA subsequently filed its Notice of Appeal to the Tax Appeal Court.  CompUSA argued that HRS § 238-2 impermissibly imposed a use tax directly on CompUSA in violation of the Commerce Clause and Equal Protection Clause of the United States Constitution, creating disparate treatment in the taxability of CompUSA's out-of-state purchases and similar purchases that could have been made in the State of Hawai'i.

CompUSA moved for summary judgment, and the Director filed a cross-motion for summary judgment.  The Tax Appeal Court held four hearings on the motions before granting the Department's motion for summary judgment and denying CompUSA's

8

motion for summary judgment.

The court explained that CompUSA contended that under the pre-2004 statute, HRS § 238-2 imposed a use tax upon any property that was purchased from an unlicensed seller, whether the seller was in-state or out-of-state, and that after the 2004 amendment, the use tax was imposed only upon property purchased from out-of-state unlicensed sellers. The court explained that the Director contended that both before and after the 2004 amendment, "[HRS] § 238-2 imposed use tax liability upon all purchases of goods from unlicensed sellers, whether they were in-state or out-of-state sellers."

The court conducted a plain-language analysis and agreed with CompUSA. It explained that the pre-2004 version of HRS § 238-2 imposed a tax on purchases of property that were imported or purchased from an unlicensed seller. The court held that by using the word "or," it was clear that the legislature intended to create two classes of property acquisition subject to use tax liability. Before the 2004 amendment, a use tax would be imposed upon property for resale that was (1) imported, or (2) purchased from an in-state unlicensed seller.

The court then found that the post-2004 version of HRS § 238-2 changed the tax scheme; based on the plain language, the court held that the meaning of unlicensed seller now referred

only to out-of-state unlicenced sellers.  The court concluded
that because the pre-amendment scheme imposed a tax on both in-
state and out-of-state unlicensed sellers, but the amended
statute imposes a tax only on out-of-state unlicensed seller
transactions, the amended 2004 version discriminates against out-
of-state unlicensed seller acquisitions.

However, the Tax Appeal Court found that, while
discriminatory, HRS § 238-2 does not violate the Commerce Clause
because it advances a legitimate local purpose that cannot be
adequately served by reasonable nondiscriminatory alternatives.
The court agreed with the Director, who asserted that the use tax
is legitimate because "it balances the general excise tax burden
that is imposed upon all business activity within the state.
Without striking such a balance, out-of-state unlicensed seller
transactions would be free of any general excise tax burden while
in-state unlicensed seller transactions would be unfairly
burdened."  Thus, the use tax levels the playing field.  The Tax
Appeal Court noted that:

> the Hawaii Supreme Court recognized the concept of
> leveling the playing field by its own words,
> "minimizing the price advantage of out-of-state
> goods," as a valid justification for imposing a use
> tax upon taxpayer's purchase of goods from an out-of-
> state seller for use in Hawaii.  CompUSA Stores LP v.
> Department of Taxation, 128 Hawaii 116, 123, 284 P.3d
> 209 (Sup.Ct. 2011).

(Formatting altered).

10

The Tax Appeal Court concluded that the GET and the use tax present a complementary tax scheme that does not violate the Commerce Clause.

Finally, the Tax Appeal Court determined that the classification established by the 2004 amendment is not a suspect class, and thus, the constitutional challenge to the statute is subject to rational basis review.  As such, HRS § 238-2 does not violate the Equal Protection Clause because the classification made by HRS § 238-2 functioned to level the economic playing field and was not arbitrary, capricious, or unreasonable.

Accordingly, the Tax Appeal Court denied CompUSA's Motion for Summary Judgment and granted the Department's Motion for Summary Judgment.  The Tax Appeal Court issued its final judgment on October 6, 2015.

**C.   Appeal to the ICA and Transfer Application**

On November 3, 2015, CompUSA filed a notice of appeal. On June 6, 2016, this court accepted CompUSA's application for transfer.

### III.  Standards of Review

**A.   Tax Appeal Court Summary Judgment Decisions**

> This court reviews an award of summary judgment de
> novo, under the same standards applied by the trial
> court.  Therefore, summary judgment is appropriate if
> the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine

11

> issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Where the appeal is from the Tax Appeal Court, it is well settled that, in reviewing the findings of fact, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was clearly erroneous. When the facts are undisputed and the sole question is one of law, the decision of the Tax Appeal Court is reviewed under the right/wrong standard.

Travelocity.com, L.P. v. Dir. of Taxation, 135 Hawaiʻi 88, 96-97, 346 P.3d 157, 165-66 (2015) (internal quotation marks and citations omitted).

## B.    Constitutional Questions

"We review questions of constitutional law de novo, under the right/wrong standard." State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (internal quotation marks and citation omitted).

## IV.   Discussion

CompUSA presents two points of error:

1.    The Tax Appeal Court erred as a matter of law when it did not grant Taxpayer's Motion for Summary Judgment because there were no genuine issues of material fact and Taxpayer was entitled to judgment as a matter of law, inasmuch as (a) HRS § 238-2 violates the Commerce Clause; and/or (b) HRS § 238-2 violates the Equal Protection Clause.

2.    The Tax Appeal Court erred when it granted Director's Motion for Summary Judgment because HRS § [sic] (a) HRS § 238-2 violates the Commerce Clause; and/or (b) HRS § 238-2 violates the Equal Protection Clause.

12

## A.    GET and Use Tax

All business in Hawaiʻi are subject to the GET.  This court described the general excise tax or GET as follows:

> The general excise tax, originally enacted in 1935 to replace the short-lived business excise tax which was passed in 1932 at the height of the Great Depression, is the State's principal source of governmental revenue.  In form, it is a tax imposed upon entrepreneurs for the privilege of doing business; in effect, it is more.  It has been characterized as "an amalgam of consumption, business and income taxation," for the ultimate burden is often shifted forward to consumers.  The tax applies at all levels of economic activity from production or manufacturing to retailing, albeit at different rates, and to virtually all goods and services.

Matter of Tax Appeal of Cent. Union Church Arcadia Ret. Residence, 63 Haw. 199, 202, 624 P.2d 1346, 1349 (1981) (internal citations omitted); see also Pratt v. Kondo, 53 Haw. 435, 436, 496 P.2d 1, 2 (1972) ("virtually every economic activity imaginable" is subject to the GET).

The use tax, HRS § 238-2, is a tax "on the use in this State of tangible personal property which is imported by a taxpayer in this State whether owned, purchased from an unlicensed seller, or however acquired for use in this State." HRS § 238-2 (Supp. 2004).  The use tax "shall accrue when the property is acquired by the importer or purchaser and becomes subject to the taxing jurisdiction of the State."  HRS § 238-2 (Supp. 2004).  "The general theory behind such a tax is to make all tangible property used or consumed in the State subject to a

13

uniform tax burden irrespective of whether it is acquired within the State, making it subject to the [GET], or from without the State, making it subject to a use tax at the same rate." Matter of Hawaiian Flour Mills, Inc., 76 Hawai'i 1, 13, 868 P.2d 419, 431 (1994) (internal citations, formatting, and quotation marks omitted).

## B. Commerce Clause

CompUSA argues that Hawaii's use tax violates the Commerce Clause. The Commerce Clause grants Congress the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const., art. I, § 8, cl. 3. The Commerce Clause "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of the State of Or., 511 U.S. 93, 98 (1994). The Commerce Clause "generally prohibits states from levying taxes that impose multiple burdens on, or discriminate against, interstate commerce." Baker & Taylor, 103 Hawai'i at 367, 82 P.3d at 812.

### 1. On its Face, HRS § 238-2 Discriminates Against Interstate Commerce.

In determining whether the "negative" or "dormant" aspect of the Commerce Clause is violated by a statute, the first

14

step is to determine whether "it discriminates on its face against interstate commerce."  United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 338 (2007).  In the context of this first step:

> "[D]iscrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. Discriminatory laws motivated by simple economic protectionism are subject to a virtually per se rule of invalidity, which can only be overcome by a showing that the State has no other means to advance a legitimate local purpose.

Id. at 338–39 (internal citations omitted).

HRS § 238-2 provides, in relevant part:  "There is hereby levied an excise tax on the use in this State of tangible personal property which is imported by a taxpayer in this State whether owned, purchased from an unlicensed seller, or however acquired for use in this State."  (Emphasis added).

The term "use" under HRS § 238-1 includes:

> any use, whether the use is of such nature as to cause the property, services, or contracting to be appreciably consumed or not, or the keeping of the property or services for such use or for sale, the exercise of any right or power over tangible or intangible personal property incident to the ownership of that property, and shall include control over tangible or intangible property by a seller who is licensed or who should be licensed under chapter 237, who directs the importation of the property into the state for sale and delivery to a purchaser in the State, liability and free on board (FOB) to the contrary notwithstanding, regardless of where title passes . . . .

HRS § 238-1.

The definition of "import" includes "importation into

15

the State of tangible property, services, or contracting owned, purchased from an unlicensed seller, or however acquired, from any other part of the United States or its possessions or from any foreign country, whether in interstate or foreign commerce, or both." HRS § 238-1. Therefore, based on the plain language of the statute, only those taxpayers that import tangible personal property into the State, either through interstate commerce or foreign commerce, are required to pay the use tax under HRS § 238-2. Taxpayers who acquire their personal property through intrastate commerce are not subject to the use tax.

"It is well established . . . that a law is discriminatory if it taxes a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." Oregon Waste, 511 U.S. at 99 (quotation marks and brackets omitted). HRS § 238-2 taxes the use of property that is imported over state lines into Hawai'i, but does not tax the use of property purchased within the state. Therefore, on its face, HRS § 238-2 discriminates against interstate commerce.[5]

---

[5] The Tax Appeal Court concluded that HRS § 238-2 was not discriminatory on its face prior to the 2004 amendment. Ultimately, we need not resolve that question because CompUSA's relevant refund requests, which are for the years 2006, 2007, and 2008, are governed by the current version of HRS § 238-2.

2.    **HRS § 238-2 Complies With the Commerce Clause Because It Advances a Legitimate Local Purpose That Cannot Be Adequately Served By Reasonable Nondiscriminatory Alternatives.**

If a tax law is discriminatory on its face, it will nevertheless comport with the Commerce Clause if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  Oregon Waste, 511 U.S. at 100-01.  One such legitimate local purpose is to ensure that those engaged in interstate commerce contribute their just share of state tax burdens by imposing a tax that complements an existing tax on intrastate commerce.  Id. at 102-03; see also Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 69 (1963) (concluding that the Louisiana use tax at issue was discriminatory if considered on its own, but that a proper analysis of its constitutionality must take "the whole scheme of taxation into account").

Under the "compensatory" or "complementary" tax doctrine, "a facially discriminatory tax that imposes on interstate commerce the rough equivalent of an identifiable and 'substantially similar' tax on intrastate commerce does not offend the negative Commerce Clause."  Oregon Waste, 511 U.S. at 102-03.  The United States Supreme Court has provided the following framework for determining whether a discriminatory tax

17

constitutes a "compensatory tax" so as to not contravene the

Commerce Clause:

> To justify a charge on interstate commerce as a
> compensatory tax, a State must, as a threshold matter,
> identify the intrastate tax burden for which the State
> is attempting to compensate.  Once that burden has
> been identified, the tax on interstate commerce must
> be shown roughly to approximate—but not exceed—the
> amount of the tax on intrastate commerce.  Finally,
> the events on which the interstate and intrastate
> taxes are imposed must be substantially equivalent;
> that is, they must be sufficiently similar in
> substance to serve as mutually exclusive proxies for
> each other.

Id. at 103 (internal citations omitted).

### a.    Identification of Intrastate Tax

As a threshold matter, we must identify the intrastate

tax for which the use tax seeks to compensate.  See id.  CompUSA

argues that there is no comparable intrastate tax because the

intrastate tax in Hawaiʻi, the GET, is imposed on in-state

purchasers, rather than in-state sellers.  The Department argues

that, despite that difference, the GET is nevertheless the

intrastate tax for which the use tax compensates.

The intrastate tax "must serve some purpose for which

the State may otherwise impose a burden on interstate commerce."

Fulton Corp. v. Faulkner, 516 U.S. 325, 334 (1996).  A state has

"no general sovereign interest in taxing income earned out of

state"; therefore, a state "must identify some in-state activity

or benefit in order to justify the compensatory levy."  Id.; see

Maryland v. Louisiana, 451 U.S. 725, 759 (1981).

18

In Fulton, the United States Supreme Court concluded that North Carolina's interstate "intangibles tax" violated the Commerce Clause. 516 U.S. at 327. The interstate "intangibles tax" functioned as follows:

> [A] corporation doing all of its business within the State would pay corporate income tax on 100% of its income, and the taxable percentage deduction allowed to resident owners of that corporation's stock under the intangibles tax would likewise be 100%. Stock in a corporation doing no business in North Carolina, on the other hand, would be taxable on 100% of its value. For the intermediate cases, holders of stock were able to look up the taxable percentage for a large number of corporations as determined and published annually by the North Carolina Secretary of Revenue (Secretary). In 1990, for example, the Secretary determined the appropriate taxable percentage of IBM stock to be 95%, meaning that IBM did 5% of its business in North Carolina, with its stock held by North Carolina residents being taxable on 95% of its value.

Id. at 328.

The Secretary argued that the intrastate general corporate income tax was complementary because one of the services provided by the State, which was supported by that tax, was to maintain a capital market for corporations. Id. at 335-36.

The Court determined that the "intangibles tax" had no comparable intrastate tax because "the linkage in this case between the intrastate burden and the benefit shared by out-of-staters is far too tenuous to overcome the risk posed by recognizing a general levy as a complementary twin." Id. at 336. In other words, the intrastate tax did not provide the same

19

benefits and burdens as the interstate "intangibles tax."

In contrast to the circumstances in Fulton, the United States Supreme Court has stated that a use tax complements a sales tax because "a State is attempting to impose a tax on a substantially equivalent event to assure uniform treatment of goods and materials to be consumed in the State." Maryland, 451 U.S. at 759. The Court has extended that holding to a gross receipts tax, like Hawaii's GET. In International Harvester, the Court stated, "[t]here is the same practical equivalence whether the tax is on the selling or the buying phase of the transaction. Each is in substance an imposition of a tax on the transfer of property." Int'l Harvester Co. v. Dep't of Treasury of State of Ind., 322 U.S. 340, 348 (1944). The Court continued that in light of its decisions upholding the "constitutional authority to impose a sales tax or a use tax on these transactions[,] . . . a constitutional difference is not apparent when a 'gross receipts' tax is utilized instead." Id.

The interstate use tax in Hawai'i is designed to complement the intrastate GET. See Matter of Habilitat, Inc., 65 Haw. 199, 209, 649 P.2d 1126, 1133–34 (1982) ("The [use] tax buttresses the [GET] as [the use tax] is designed to prevent the avoidance of excise taxes through direct purchases from the mainland. Its ultimate purpose is to remove the competitive

20

advantage an out-of-state wholesaler or retailer would otherwise have over a seller subject to the payment of State excise taxes."). The GET intrastate tax is similar to a sales tax in that it applies "at all levels of economic activity . . . and to virtually all goods and services" and "the ultimate burden [of the GET] is often shifted forward to consumers." Arcadia, 63 Haw. at 202, 624 P.2d at 1349. Thus, the GET is unlike the intrastate corporate income tax in Fulton because the GET is a "substantially equivalent taxable event," rather than a tax that has only a remote connection to the interstate tax. See id.; see also Habilitat, 65 Haw. 199, 649 P.2d 1126; Hawaiian Flour, 76 Hawaiʻi 1, 868 P.2d 419.

By identifying the GET as the intrastate tax, the Department has met its burden to identify the intrastate tax burden for which the state is attempting to compensate. See Oregon Waste, 511 U.S. at 103.

### b. Tax Amounts are Approximate

Once the intrastate tax is identified, we must determine if the tax on interstate commerce roughly approximates the amount taxed on intrastate commerce without exceeding it. Oregon Waste, 511 U.S. at 102-03. CompUSA argues that the tax amounts are not approximately equal because an in-state buyer pays no tax on an in-state purchase, but will always pay a use

21

tax on the purchase of the same item purchased out-of-state. CompUSA also argues that the taxes are not approximate because a purchaser subject to the use tax would not be entitled a credit for gross receipts taxes paid to another state.

First, the GET and use tax scheme is designed to make the tax rate the same between intrastate and interstate taxation. Hawaiian Flour, 76 Hawai'i at 13, 868 P.2d at 431 ("The general theory behind such a tax is to make all tangible property used or consumed in the State subject to a uniform tax burden irrespective of whether it is acquired within the State, making it subject to [the GET], or from without the State, making it subject to a use tax at the same rate.") (internal quotations and citation omitted).

Second, as previously discussed, the burden of the GET is generally passed on to the consumer. Arcadia, 63 Haw. at 202, 624 P.2d at 1349. Therefore, there should be little difference between what a consumer pays on in-state as opposed to out-of-state transactions.

Finally, in instances where the use tax would exceed the GET, exemptions, deductions, and credits are provided by statute, including for gross receipts taxes paid to another state. See HRS §§ 237-22 and 238-3(i). A more developed discussion of HRS §§ 237-22 and 238-3(i) as they relate to this

issue is presented in the analysis of the use tax under the "internal consistency" test, <u>infra</u>.[6]  Thus, the use tax and GET tax scheme are approximate.

### c.    Taxes are Complementary

Finally, the Department must show that the taxes are complementary, that is "the events on which the interstate and intrastate taxes are imposed must be substantially equivalent; that is, they must be sufficiently similar in substance to serve as mutually exclusive proxies for each other."  <u>Oregon Waste</u>, 511 U.S. at 103.

The United States Supreme Court has upheld the complementary nature of a use tax and sales tax.  <u>See, e.g.,</u> <u>Henneford v. Silas Mason Co.</u>, 300 U.S. 577, 582-83 (1937).  In <u>Oregon Waste</u>, the Supreme Court maintained that "use taxes on products purchased out of state are the only taxes [the Court has] upheld in recent memory under the compensatory tax doctrine."  511 U.S. at 105; <u>see</u> <u>Fulton</u>, 516 U.S. at 339 (listing tax pairings that the Supreme Court previously held were not sufficiently similar to be mutually exclusive proxies for each other).

The GET and use tax in Hawai'i operate so as to be

---

[6]    <u>See</u> <u>infra</u>, Section 3 ("HRS § 238-2 Also Satisfies the Internal Consistency Test.") for a full discussion of tax credits.

23

complementary--like sales taxes and use taxes in other states.

This court described the complementary nature of Hawaii's use tax

and GET in <u>Hawaiian Flour</u>:

> In the absence of a use tax that complements a GET, sellers of goods acquired out-of-state theoretically enjoy a competitive advantage over sellers of goods acquired in-state: not being subject to the GET, out-of-state products would be less expensive than in-state products, the prices of which would presumably reflect some pass-on of the GET.  Thus, the use tax buttresses the [GET] as it is designed to prevent the avoidance of excise taxes through direct purchases from the mainland. Its ultimate purpose is to remove the competitive advantage an out-of-state wholesaler or retailer would otherwise have over a seller subject to the payment of State excise taxes.

76 Hawaiʻi at 13, 868 P.2d at 431 (internal citations,

formatting, and quotation marks omitted).

CompUSA makes several arguments to show that Hawaii's

use tax violates the Commerce Clause.[7]  CompUSA argues that the

---

[7]    CompUSA asserts that the use tax does not level the playing field for local vendors because it leaves in-state purchases from unlicensed businesses free from a tax burden.  The only evidence presented by CompUSA that unlicensed businesses are free from a tax burden is the change of language when HRS § 238-2 was amended in 2004, discussed <u>supra</u> in Section II.A.  The Director argues that no version of HRS § 238-2 ever imposed a use tax on in-state purchases.

Hawaiʻi statutes and Hawaiʻi caselaw suggest that the pre-amended version of HRS § 238-2 did not cover in-state sellers.  Both before and after the 2004 amendment, the definition of "unlicensed seller" subject to the use tax excludes any business subject to the GET, whether or not the seller holds a license under the GET.  HRS § 238-1.  This interpretation is consistent with the extraordinarily broad sweep of the GET.  Chapter 237 "subjects to the general excise tax virtually every economic activity imaginable."  Pratt, 53 Haw. at 436, 496 P.2d at 2.  The GET statute defines eight categories of businesses subject to the GET, and a catchall provision, which provides that the GET is imposed "[u]pon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling not included in the preceding paragraphs or any other provisions of this chapter."  HRS § 237-13 (Supp. 2003) (emphases added).  The catchall provision existed long before the use tax was amended in 2004, and Hawaiʻi case law has long interpreted the

(continued...)

24

purchaser of in-state goods is not subject to the GET, while the purchaser of out-of-state goods is subject to the use tax.[8]  We agree with CompUSA that purchasers of in-state goods are not subject to the GET.  However, this distinction is not material since, as we previously held, businesses that pay GET generally pass on the cost of the GET to the purchasers of in-state goods. See Arcadia, 63 Haw. at 202, 624 P.2d at 1349 (the GET "has been characterized as 'an amalgam of consumption, business and income taxation,' for the ultimate burden is often shifted forward to consumers"); Hawaiian Flour, 76 Hawai'i at 13, 868 P.2d at 431 ("the prices of [in-state products] would presumably reflect some pass-on of the GET").

CompUSA also argues that there is a reasonable nondiscriminatory alternative to Hawaii's use tax, which is

---

[7](...continued)
GET to apply to every type of in-state business in Hawai'i.  See, e.g., Matter of Grayco Land Escrow, Ltd., 57 Haw. 436, 443, 559 P.2d 264, 270 (1977) ("in plain and unmistakable language, the statute evidences the intention of the legislature to tax every form of business, subject to the taxing jurisdiction, not specifically exempted from its provisions." (citation omitted)).

In sum, HRS § 238-1 excludes from the definition of unlicensed seller any seller subject to the GET, whether or not the seller has a GET license, and the GET is imposed on all business activity in Hawai'i.  Thus, there does not appear to be a category of in-state unlicensed businesses in Hawai'i which the pre-amendment version of HRS § 238-2 covered.

[8]     In making its arguments, CompUSA relies on Molloy v. Gov't of the Virgin Islands, 594 F. Supp. 2d 595, 597 (D.V.I. 2007), arguing "the United States District Court for the District of the Virgin Islands held that a personal use tax similar in structure and effect to HRS § 238-2 violated the Commerce Clause."  Molloy is distinguishable because there was no sales tax or GET in the Virgin Islands against which the use tax was balanced; only out-of-state purchases were subject to a tax.  Id.

"similar to Arizona's alternative – that is, impose the use tax on all transactions and give credit for any purchases from licensed businesses." The Director argues that imposing the tax upon all in-state and out-of-state purchases would still result in a competitive advantage for out-of-state merchants. The Director explains that CompUSA's proposal would require Hawai'i consumers to perform an extra step when they purchased locally – they would have to report their in-state purchases and then request a credit. Further, the Director argues that it would thus be easier, and potentially less expensive, for Hawai'i consumers to simply purchase out-of-state goods. We agree with the Director that adding an additional taxpayer burden on in-state purchases would defeat the purpose of leveling the playing field.

Thus, the interstate and intrastate taxes are substantially equivalent and complementary. Accordingly, the use tax advances a legitimate local purpose that cannot be adequately served by reasonably nondiscriminatory alternatives; therefore, the use tax satisfies Oregon Waste and does not violate the Commerce Clause.

3. **HRS § 238-2 Also Satisfies the Internal Consistency Test.**

CompUSA argues that HRS § 238-2 also violates the

Commerce Clause because it is not internally consistent--another method of determining if a tax scheme violates the Commerce Clause. The United States Supreme Court described the internal consistency test as follows:

> [The internal consistency test], which helps courts identify tax schemes that discriminate against interstate commerce, looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate.
>
> By hypothetically assuming that every State has the same tax structure, the internal consistency test allows courts to isolate the effect of a defendant State's tax scheme. This is a virtue of the test because it allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes.

Comptroller of Treasury of Maryland v. Wynne, 135 S. Ct. 1787, 1802 (2015) (internal quotations omitted).

States avoid multiple taxation by providing statutory exemptions from the use tax when a sales tax has already been paid in another state. See Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue, 483 U.S. 232, 245 (1987); Goldberg v. Sweet, 488 U.S. 252, 263-64 (1989).

CompUSA asserts that HRS § 238-2 is internally inconsistent because Hawaii's use tax does not have an adequate credit or exemption for taxes paid to another state. CompUSA

27

also argues that HRS § 238-3(i) does not provide a credit for the GET, also known as gross receipts tax, paid to another state. We disagree. When utilized together, HRS § 238-3(i) and HRS § 237-22 are compliant with the Commerce Clause's requirements to avoid multiple taxation.

In the HRS use tax chapter, HRS § 238-3(i) provides that, "Each taxpayer liable for . . . [the use tax] shall be entitled to full credit for the combined amount or amounts of legally imposed sales or use taxes paid by the taxpayer . . . to another state and any subdivision thereof . . . ." Thus, HRS § 238-3(i) provides a full credit for sales or use taxes paid out of state.

In the HRS GET chapter, HRS § 237-22 provides that payments for sales, gross receipts, or use taxes paid out of state will be offset. HRS § 237-22(b) requires that "each taxpayer liable for the tax imposed by this chapter shall be entitled to full offset for the amount of legally imposed sales, gross receipts, or use taxes paid by the taxpayer with respect to the imported property, service, or contracting to another state and any subdivision thereof . . . ." (Emphasis added).

Further, HRS § 237-22(a) requires that the GET include exemptions or deductions where needed to comply with the United States Constitution and laws of the United States. See HRS

§ 237-22(a) (2002) ("In computing the amounts of any tax imposed under this chapter, there shall be excepted or deducted from the values, gross proceeds of sales, or gross income so much thereof as, under the Constitution and laws of the United States, the State is prohibited from taxing, but only so long as and only to the extent that the State is so prohibited."). Thus, HRS § 237-22 guards against multiple taxation by mandating exemptions or deductions where multiple taxation arises.

Accordingly, the use tax is complementary and internally consistent, and the Director has met the burden to prove that the use tax, HRS § 238-2, does not violate the Commerce Clause.

## C.   Equal Protection Clause

CompUSA argues that HRS § 238-2 violates the Equal Protection Clause because the statute does not withstand rational basis review. When examining an equal protection claim, this court applies rational basis review unless fundamental rights or suspect classifications are implicated. KNG Corp. v. Kim, 107 Hawaiʻi 73, 82, 110 P.3d 397, 406 (2005). A party challenging the constitutionality of a statutory classification subject to rational basis review has the burden of showing, "with convincing clarity, that the classification is not rationally related to the statutory purpose, or that the challenged classification does not

29

rest upon some ground of difference having a fair and substantial relation to the object of the legislation, and is therefore not arbitrary and capricious." Id. at 82, 110 P.3d at 406 (emphasis omitted).

The rational basis standard "is especially deferential in the context of classifications made by complex tax laws. In structuring internal taxation schemes the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." Nordlinger v. Hahn, 505 U.S. 1, 11 (1992) (internal citations omitted); see Gen. Motors Corp. v. Tracy, 519 U.S. 278, 311 (1997) ("in taxation, even more than in other fields, legislatures possess the greatest freedom in classification.").

CompUSA argues that the 2004 amendment to HRS § 238-2 in response to Baker & Taylor created disparity between two different classes of taxpayers, in-state purchasers and out-of-state purchasers. CompUSA argues that the burden the law now imposes on only out-of-state purchases is not rationally related to the stated legislative purpose in enacting the changes to HRS § 238-2, and thus the classification is "palpably arbitrary."

Although the statute establishes a classification between in-state and out-of-state sellers, HRS § 238-2 survives rational basis review. As explained in detail in the above

Commerce Clause analysis, the classification of out-of-state sellers bears a rational relationship to the legitimate state interest of "leveling the economic playing field" for local businesses subject to the GET.  Thus, the classification is not arbitrary or irrational, and the statute does not violate the Equal Protection Clause.  See KNG Corp., 107 Hawaiʻi at 82, 110 P.3d at 406.  The Tax Appeal Court was correct in so concluding.

## V.  Conclusion

For the foregoing reasons, we affirm the Tax Appeal Court's October 6, 2015 judgment granting the Director's motion for summary judgment and denying CompUSA's motion for summary judgment.

Christopher J. Muzzi
for appellant

Kimberly Tsumoto Guidry
for appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

