**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000496
10-NOV-2025
08:12 AM
Dkt. 128 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF THE TAX APPEAL OF HAWAIIAN AIRLINES, INC.,
Appellant-Appellant/Cross-Appellee,
v.
DEPARTMENT OF TAXATION, STATE OF HAWAI'I,
Appellee-Appellee/Cross-Appellant

NO. CAAP-24-0000496

APPEAL FROM THE TAX APPEAL COURT
(CASE NO. 1CTX-22-0000983)

NOVEMBER 10, 2025

LEONARD, PRESIDING JUDGE, HIRAOKA AND WADSWORTH, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

**Hawaiian** Airlines, Inc. flies jet aircraft manufactured by **Boeing.** It services and maintains its Boeing aircraft with parts it buys from Boeing under a *Customer Services General Terms Agreement Relating to Boeing Aircraft*. Hawaiian agreed to "be

responsible for and pay all" general excise tax (**GET**) levied on Boeing for aircraft parts sold to Hawaiian.

In 2021 the Hawaiʻi **Department** of Taxation notified Boeing it owed additional GET on aircraft part sales to Hawaiian. Hawaiian paid the GET for Boeing under protest.  Hawaiian asked the Department for a refund.  It explained that "amounts received by Boeing for sale of aircraft parts" are "maintenance costs" exempt from GET under Hawaii Revised Statutes (**HRS**) § 237-24.9(a).[1]  The Department did not respond.

Hawaiian sued the Department for a refund in Tax Appeal Court.[2]  The Department challenged jurisdiction.  The court ruled it had jurisdiction.[3]  Hawaiian and the Department filed cross-motions for summary judgment.  The court granted the Department's motion, denied Hawaiian's motion, and entered a *Final Judgment* for the Department against Hawaiian.[4]  Hawaiian appeals, and the Department cross-appeals.[5]

We hold:  **(A)** the Tax Appeal Court had jurisdiction over Hawaiian's claim for a refund of GET it paid on Boeing's

---

[1]    The relevant text of the statute appears in section IV.C.1 below.

[2]    HRS § 232-1 (2017) gives a person contractually obligated to pay a tax assessed against another the right of appeal "as if the tax were assessed against the person."

[3]    The Honorable Gary W.B. Chang presided.

[4]    The Honorable Kevin T. Morikone presided.

[5]    Appeals from decisions of the Tax Appeal Court have statutory priority.  HRS § 232-19 (2017), amended by, 2025 Haw. Sess. Laws Act 10, § 2 at 14.

behalf and the claim was not subject to abatement; **(B)** the claim was timely; and **(C)** Boeing's "gross proceeds of sales" of aircraft parts to Hawaiian, taxable under HRS § 237-13(2) (2001 & Supp. 2013),[6] are not "amounts received from the servicing and maintenance of aircraft," otherwise taxable under HRS § 237-13(6) but exempt under HRS § 237-24.9 (2001). We affirm the Final Judgment.

## I. BACKGROUND

This dispute arose from Boeing's Hawai'i GET returns for tax years 2013-2018. Relevant to this appeal, the Hawai'i General Excise Tax Law, HRS Chapter 237, provided:

> There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified, as follows:
>
> . . . .
>
> (2) Tax on business of selling tangible personal property; producing.
>
> (A) Upon every person engaging or continuing in the business of selling any tangible personal property whatsoever . . . , there is likewise hereby levied, and shall be assessed and collected, a tax equivalent to four per cent of the gross proceeds of sales of the business . . . .
>
> . . . .
>
> (6) Tax on service business.
>
> (A) Upon every person engaging or continuing within the State in any service business or calling including professional services not otherwise specifically taxed under this chapter, there is likewise hereby

---

[6] The statute was amended in 2014, 2015, and 2018, but the relevant language was not changed.

> levied and shall be assessed and collected
> a tax equal to four per cent of the gross
> income of the business[.]

HRS § 237-13.

Boeing claimed an exemption under HRS § 237-24.9 for gross proceeds of its sale of aircraft parts to Hawaiian and others. Hawaiian Airlines, Inc. v. Dep't of Tax'n, 155 Hawaiʻi 197, 201, 559 P.3d 283, 287 (2024) (**HA I**). The Department disallowed the exemption. Boeing and Hawaiian challenged the Department's position. The Department eventually issued a notice of proposed assessment (**NOPA**) to Boeing. The NOPA told Boeing it owed $1,965,290.57 in additional GET. HA I, 155 Hawaiʻi at 203, 559 P.3d at 289.[7]

Boeing informed Hawaiian that Hawaiian's share of the GET under the Agreement was $1,624,482.75.[8] Boeing asked Hawaiian to pay that amount to Boeing under the Agreement or to "the State of Hawaii directly on our behalf." Id. Hawaiian paid the State for Boeing. Hawaiian informed the Department the GET "is being paid UNDER PROTEST pursuant to HRS Sec. 40-35" because Hawaiian's payments to Boeing for aircraft parts were exempt from GET under HRS § 237-24.9. Id.

Hawaiian's payment was submitted online on June 9, 2021. Hawaiian sued the Department in Tax Appeal Court the next

---

[7] Neither the NOPA nor the Department's Notice of Final Assessment to Boeing are in the record of this appeal.

[8] The remaining balance "represented GET taxes owed for Boeing's sale of retail parts to other customers. Boeing's portion was not paid under protest." HA I, 155 Hawaiʻi at 203, 559 P.3d at 289.

day (the **Payment-Under-Protest Action**).  The Department moved to dismiss.  The court granted the motion "on the basis of this court lacking subject matter jurisdiction."  HA I, 155 Hawaiʻi at 209, 559 P.3d at 295.  Hawaiian appealed.  We affirmed.  Hawaiian Airlines, Inc. v. Dep't of Tax'n, No. CAAP-22-0000349, 2024 WL 1129759 (Haw. App. Mar. 15, 2024) (SDO), vacated, 155 Hawaiʻi 197, 559 P.3d 283 (2024).

On certiorari, the supreme court held the Tax Appeal Court had jurisdiction over the Payment-Under-Protest Action because "a NOPA qualifies as a 'formal administrative decision' required . . . to invoke HRS § 40-35 jurisdiction."  HA I, 155 Hawaiʻi at 213, 559 P.3d at 299.  The supreme court remanded the case "for further proceedings consistent with [its] opinion."  Id. at 215, 559 P.3d at 301.  We take judicial notice[9] that nothing substantive has happened in the Tax Appeal Court since the Payment-Under-Protest Action was remanded.[10]

Meanwhile, on December 8, 2022 (while Hawaiian's appeal from the Payment-Under-Protest Action was pending), Hawaiian filed the action below.  Hawaiian sought "an order declaring the payment of $1,624,482.75 . . . to be an unlawful government realization and ordering a refund of the same, together with statutory interest, to [Hawaiian.]"  The Department's answer

---

[9]    See Rule 201, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016).

[10]    The Tax Appeal Court held a status conference on March 17, 2025, and set a further status conference for March 16, 2026.  Judiciary Information Management System case no. 1CTX-21-0000493, dkt. 175.  It appears the court and the parties are awaiting our disposition of this appeal.  Id.

challenged subject matter jurisdiction and asserted the statute of limitations as an affirmative defense.

Hawaiian moved for partial summary judgment on the Tax Appeal Court's jurisdiction, and sought a ruling that the refund claim was not time-barred. The court granted the motion, concluding "it has subject matter jurisdiction over this cause."[11] The written order did not address the timeliness issue, but the court stated during the hearing that Hawaiian's "claim is timely filed."

Hawaiian and the Department then filed cross-motions for summary judgment. The Tax Appeal Court granted the Department's motion and denied Hawaiian's motion. A Final Judgment for the Department against Hawaiian was entered on July 15, 2024. Hawaiian appeals, and the Department cross-appeals.

## II. POINTS OF ERROR

Hawaiian contends Boeing was entitled to an exemption from GET under HRS § 237-24.9, and the Tax Appeal Court erred by denying Hawaiian's motion for summary judgment and granting the Department's motion for summary judgment.

The Department contends (1) the Tax Appeal Court did not have jurisdiction over Hawaiian's refund claim while the Payment-Under-Protest Action was on appeal; and (2) the refund claim was untimely.

_____

[11] The Honorable Gary W.B. Chang presided.

6

## III. STANDARDS OF REVIEW

### A.    Summary Judgment

We review the grant or denial of summary judgment de novo.  Tax Found. of Haw. v. State, 144 Hawaiʻi 175, 185, 439 P.3d 127, 137 (2019).  Summary judgment is appropriate if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. at 186, 439 P.3d at 138.

### B.    Subject Matter Jurisdiction

The existence of subject matter jurisdiction is a question of law reviewed de novo under the right/wrong standard. Tax Found., 144 Hawaiʻi at 185, 439 P.3d at 137.

### C.    Statutory Interpretation

Interpretation of a statute is a question of law reviewed de novo.  Tax Found., 144 Hawaiʻi at 185, 439 P.3d at 137.

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

State v. Sing, 154 Hawaiʻi 377, 382, 550 P.3d 1235, 1240 (2024).

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called upon in aid to explain what is

7

doubtful in another." Sing, 154 Hawaiʻi at 382, 550 P.3d at 1240 (quoting HRS § 1-16 (1993)).

## IV. DISCUSSION

We address the Department's cross-appeal first, because the issues raised are potentially dispositive.

### A. The Tax Appeal Court had jurisdiction over the GET refund claim; abatement did not apply.

The Department purported to challenge subject matter jurisdiction. The Tax Appeal Court has jurisdiction over appeals involving GET refunds. HRS § 232-14.5 (Supp. 2021). The Department didn't use the term, but it actually argued this case should have been *abated* in favor of the Payment-Under-Protest Action.

*Abatement* is "the suspension or defeat of a pending action for a reason unrelated to the merits of the claim[.]" Cnty. of Haw. v. C&J Coupe Fam. Ltd. P'ship, 119 Hawaiʻi 352, 369, 198 P.3d 615, 632 (2008) (brackets omitted). Abatement is a remedy; it does not implicate subject matter jurisdiction. Id.

"[W]here the party is the same in a pending suit, and the cause is the same and the relief is the same, a good plea in abatement lies." C&J Coupe, 119 Hawaiʻi at 371, 198 P.3d at 634. This case involves the same parties and relief requested in the Payment-Under-Protest Action. But the cause is different.

8

The Payment-Under-Protest Action was filed under HRS § 40-35 "to recover moneys paid under protest." HA I, 155 Hawaiʻi at 199 & n.1, 559 P.3d at 285 & n.1. The money at issue is being held in the *litigated claims fund* under HRS § 40-35(c) (2009). Should Hawaiian ultimately prevail in the Payment-Under-Protest Action, Hawaiian would be "paid the amount of the judgment out of the litigated claims fund[.]" HRS § 40-35(c).

This action was filed under HRS § 232-14.5, after the Department didn't respond to Hawaiian's claim for a refund. If Hawaiian is entitled to a refund, it doesn't appear to matter where the money would come from; the State would simply owe Hawaiian the amount of the refund.

There is another reason abatement does not apply. The reason to abate an action in favor of a prior pending action "is, that the subsequent one is unnecessary and therefore oppressive and vexatious." Oahu Lumber & Bldg. Co. v. Ah Yok, 11 Haw. 416, 418, 1898 WL 1553, at *2 (Haw. Rep. 1898). The Tax Appeal Court dismissed the Payment-Under-Protest Action for lack of jurisdiction. The supreme court vacated and remanded to the Tax Appeal Court. The substantive issues in that case have not yet been litigated. They have in this one. Thus, this action is neither unnecessary nor vexatious, and is arguably the most expedient way to resolve whether Boeing is entitled to the HRS § 237-24.9 exemption.

We hold the Tax Appeal Court had jurisdiction over Hawaiian's claim for a refund of the GET it paid for Boeing, and

this case is not subject to abatement in favor of the Payment-Under-Protest Action.

### B.    The GET refund claim was timely.

HRS § 232-14.5 applies to "tax refund claims for all taxes administered by the department of taxation."  A written notice of appeal to the Tax Appeal Court must be filed "within thirty days after notice of the denial of the claim."  HRS § 232-14.5(a).  Hawaiian claimed a refund by letter dated May 19, 2022.  HA I, 155 Hawaiʻi at 211 n.12, 559 P.3d at 297 n.12.  The Department conceded it "did not issue an official formal written notice of denial" to Hawaiian.  HRS § 232-14.5 imposes no deadline to sue for a refund if the Department doesn't issue notice that the refund is denied.[12]

If the Department does not issue notice of denial, a refund appeal may be filed with the Tax Appeal Court "at any time after one hundred eighty days from the date that the claim was filed[.]"  HRS § 232-14.5(b).  Thus, the earliest Hawaiian could have filed its refund claim was November 15, 2022.  This case was filed on December 8, 2022, in compliance with HRS § 232-14.5(b).

The Department relies on HRS § 232-14.5(c) (Supp. 2021), which states:  "Any claimed tax refund or credit appealed pursuant to this section shall be awarded only if the claim

---

[12]    The Department incorrectly argues that the Tax Appeal Court required the Department to provide notice of a denial of a refund claim.  It did not; the court just recognized that no deadline is triggered if the Department doesn't notify the taxpayer their refund claim is denied.

therefor was filed within the applicable statutory period of limitation."  The Department contends the applicable period is set by HRS § 237-40(d)(1) (2017), which provides:

> If an annual return is timely filed, or is filed within three years after the date prescribed for filing the annual return, then the credit or refund shall be claimed within three years after the date the annual return was filed or the date prescribed for filing the annual return, whichever is later.

Boeing timely filed its GET returns for tax years 2013-2018.  The returns did not report liability for, and Boeing did not pay, the amounts disputed in this case.  Hawaiian's payment for Boeing was based on the NOPA for *additional* GET.  Boeing — or Hawaiian on Boeing's behalf — couldn't claim a refund for amounts Boeing never paid.  HRS § 237-40(d)(1) does not apply under the circumstances of this case.

We hold that Hawaiian's claim for a refund of GET it paid on Boeing's behalf was timely filed under HRS § 232-14.5(b).  We now address Hawaiian's appeal.

**C.    The gross proceeds of Boeing's aircraft part sales to Hawaiian are not "amounts received from the servicing and maintenance of aircraft . . . ."**

Before determining what is excluded from GET, we examine what is included.  HRS § 237-13 levies GET on "persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified[.]"

11

The nine subsections of HRS § 237-13 specify rates against values for (1) manufacturing; (2) selling tangible personal property; (3) contracting; (4) operating theaters and similar venues; (5) sales representatives and purchasing agents; (6) service businesses; (7) insurance producers; (8) sugar benefit payments; and (9) "any business, trade, activity, occupation, or calling not included in the preceding paragraphs or any other provisions of" HRS Chapter 237.

At issue in this case is the levy on Boeing of "four per cent of the gross proceeds of sales[13]" of tangible personal property under HRS § 237-13(2). Hawaiian contends that Boeing's gross proceeds of sales of aircraft parts are exempt from GET by HRS § 237-24.9.

### 1. The plain language of HRS § 237-24.9 does not apply to Boeing's aircraft part sales.

HRS § 237-24.9 (2001) provides, in relevant part:

(a) This [GET] chapter shall not apply to **amounts received from the servicing and maintenance of aircraft** . . . .

(b) As used in this section:

"Aircraft" means any craft . . . engaged in . . . scheduled commercial use . . . that operates with **two or more jet engines**.

"Aircraft service and maintenance" means all scheduled and unscheduled **tasks performed within an aircraft service and maintenance facility** . . . .

"Aircraft service and maintenance facility" means a facility for aircraft service and maintenance that is **not less than thirty thousand square feet in area** . . . .

---

[13] "Gross proceeds of sale" means "the value actually proceeding from the sale of tangible personal property without any deduction on account of the cost of property sold or expenses of any kind." HRS § 237-3(a) (2017).

> . . . .
>
> "Maintenance" means the upkeep of aircraft engines, hydraulic and electrical systems, and all other components which are an integral part of an aircraft . . . .

(Emphasis added.)

Boeing sells aircraft parts to Hawaiian; it doesn't service or maintain Hawaiian's aircraft. Hawaiian argues that HRS § 237-24.9 "uses the passive voice – without reference to any specific actor – and thus allows for someone not mentioned [that is, Hawaiian,] to have performed the maintenance activity." Hawaiian's argument ignores the structure of HRS § 237-13 and the definitions in HRS § 237-7, which we read in pari materia with HRS § 237-24.9.

A taxpayer who receives amounts from the servicing and maintenance of aircraft is liable to pay GET based on "four per cent of the gross income of the business" under the HRS § 237-13(6) tax on "service business or calling" — except to the extent the taxpayer qualifies for the HRS § 237-24.9 exemption.

> "Service business or calling" includes all activities ***engaged in for other persons*** for a consideration which involve the rendering of a service, including professional and transportation services, ***as distinguished from the sale of tangible property or the production and sale of tangible property***.

HRS § 237-7 (2017) (emphasis added). Read together with these other sections of the GET Law, HRS § 237-24.9 applies only to taxpayers who service and maintain multi-engine jet aircraft *for others* (within a thirty-thousand-square-foot-or-more facility),

"as distinguished from the sale of tangible property or the production and sale of tangible property."

Hawaiian nevertheless argues that a "better reading of the statute is that HRS [§] 237-24.9 exempts from GET the **purchase** of aircraft parts as a necessary and included component of 'the servicing and maintenance of aircraft'" because "Hawaiian and Boeing together engage in 'the servicing and maintenance of aircraft' within the meaning of Haw. Rev. Stat. § 237-24.9." (Emphasis added.)

Hawaiian conflates Boeing's production and sale of aircraft parts with Hawaiian's purchase of those parts. GET is levied on sellers of tangible personal property under HRS § 237-13(2) ("Tax on business of selling tangible personal property"). Not buyers. Even if the seller passes its GET expense on to a buyer as part of the sales price — or, as in this case, by contract — the tax remains assessed on, and collected from, the seller.

Boeing sells aircraft parts; it must pay "four per cent of the gross proceeds of sales" as GET under HRS § 237-13(2). Hawaiian buys Boeing parts; HRS § 237-24.9 does not apply to Hawaiian because Hawaiian has no HRS § 237-13(2) GET liability on aircraft part purchases from which to be exempt. Hawaiian's obligation to indemnify Boeing for Boeing's GET liability is a function of the Agreement, not HRS § 237-13(2).

We hold that Boeing's "gross proceeds of sales" of aircraft parts, taxable under HRS § 237-13(2), are not "amounts

14

received from the servicing and maintenance of aircraft," otherwise taxable under HRS § 237-13(6) but exempt under HRS § 237-24.9.  Accordingly, Hawaiian is not entitled to a refund of the GET it paid for Boeing on Boeing's aircraft parts sales to Hawaiian.

**2.      The Use Tax exemption for using imported material, parts, or tools for aircraft service and maintenance does not require a parallel GET exemption.**

Hawaiian argues: the GET Law and the Use Tax Law (HRS Chapter 238) impose "complementary taxes"; the law creating HRS § 237-24.9 created a parallel exemption under the Use Tax Law; so "[i]f the sale of a product is exempt from GET, its import must also be exempt from the Use Tax to avoid discrimination against interstate commerce that is forbidden by the Commerce Clause of the U.S. Constitution."  See U.S. Const. art. I, § 8, cl. 3.  But the converse is not true.  When use of an imported item is exempt from Use Tax, a sale of the same item need not also be exempt from GET because the Use Tax exemption does not burden interstate commerce.

The Commerce Clause "generally prohibits states from levying taxes that . . . discriminate against[] interstate commerce."  CompUSA Stores, L.P. v. Dep't of Tax'n, 142 Hawaiʻi 304, 311, 418 P.3d 645, 652 (2018).

As relevant here, HRS § 238-2 (2017) provides:

> There is hereby levied an excise tax on the use in this State of tangible personal property which is imported by a taxpayer in this State . . . .

HRS § 238-2 discriminates against interstate commerce because it taxes the use of property imported into Hawaiʻi, but doesn't tax the use of property purchased in Hawaiʻi.  CompUSA Stores, 142 Hawaiʻi at 312, 418 P.3d at 653.  To avoid violating the Commerce Clause, a use tax must be "the rough equivalent of an identifiable and 'substantially similar' tax on intrastate commerce[.]"  Id. (quoting Or. Waste Sys., Inc. v. Dep't of Env't Quality, 511 U.S. 93, 102-03, 114 S. Ct. 1345, 128 L. Ed.2d 13 (1994)).

Here, the substantially similar tax on intrastate commerce is the GET.  See CompUSA Stores, 142 Hawaiʻi at 313, 418 P.3d at 654 ("The interstate use tax in Hawaiʻi is designed to complement the intrastate GET.").  To survive constitutional scrutiny a tax on interstate commerce must "roughly approximate[] the amount taxed on intrastate commerce without exceeding it."  Id. at 314, 418 P.3d at 655 (emphasis added) (citing Or. Waste, 511 U.S. at 102-03, 114 S. Ct. 1345).

The law that enacted HRS § 237-24.9 also amended the Use Tax Law's definition of "use."  See 1997 Haw. Sess. Laws Act 107, § 4 at 205-06.  After the law was enacted, HRS § 238-1 (Supp. 1998) provided:

> [T]he term "use" shall not include:
>
>   . . . .

16

> (8) The use of material, parts, or tools imported or purchased by a person licensed under chapter 237 [(the GET Law)] which are used for aircraft service and maintenance, or the construction of an aircraft service and maintenance facility as those terms are defined in section 237-24.9.

Thus, if Hawaiian purchased material, parts, or tools in another state, shipped them to Hawai'i, and used them for aircraft service and maintenance, it would not have to pay Use Tax. If Hawaiian purchased the same material, parts, or tools locally, it would ordinarily pay the seller's GET as part of the sales price. The interstate Use Tax would not exceed the parallel intrastate GET. There would be no discriminatory burden on interstate commerce, and no Commerce Clause violation. CompUSA Stores, 142 Hawai'i at 314, 418 P.3d at 655. The Use Tax exemption for using imported material, parts, or tools to service and maintain aircraft does not discriminate against interstate commerce, and thus does not require a parallel GET exemption.

### 3. Courts cannot construe a statute to achieve a public policy goal not authorized by the statute's language.

Hawaiian argues that not adopting its "better reading" of HRS § 237-24.9, given the Use Tax exemption for imported material, parts, or tools used to service and maintain aircraft, "penalizes local sellers and encourages airlines to obtain their parts from out of state." It cites statutes from sixteen states that "explicitly exempt aircraft parts from their sales tax if sold to a federally licensed air carrier." It claims there would be "a perverse incentive for airlines flying to Hawaii to locate

and staff maintenance facilities outside of Hawaii and in a state with a favorable sales tax exemption."  Those are matters for consideration by the legislature.  See Haw. Insurers Council v. Lingle, 120 Hawaiʻi 51, 69-70, 201 P.3d 564, 582-83 (2008) ("The power of taxation is essentially a legislative power.").  The courts' role is to ascertain and give effect to the legislature's intention, which we obtain from the language of the statute.  Sing, 154 Hawaiʻi at 382, 550 P.3d at 1240.

## V. CONCLUSION

Boeing's aircraft part sales to Hawaiian do not qualify for the HRS § 237-24.9 exemption because Boeing's "gross proceeds of sales" were not "received from the servicing and maintenance of aircraft."  Hawaiian is not entitled to a refund of the GET it paid for Boeing.  The July 15, 2024 *Final Judgment* for the Department against Hawaiian is affirmed.

On the briefs:

Thomas Yamachika,
for Appellant-Appellant/
Cross-Appellee Hawaiian
Airlines, Inc.

Nathan S.C. Chee,
Janine R. Udui,
Deputy Attorneys General,
State of Hawaiʻi,
for Appellee-Appellee/
Cross-Appellant
Department of Taxation,
State of Hawaiʻi.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge